IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.

JEREMY S. COPPLE,
Defendant.

Case No. 17–CR–40011–JPG–9

## **MEMORANDUM & ORDER**

Before the Court is Defendant Jeremy S. Copple's Motion for Compassionate Release. (ECF No. 568). For the reasons below, the Court **DENIES** Copple's Motion.

### I. PROCEDURAL & FACTUAL HISTORY

#### A. The Conviction

In 2017, a federal grand jury in this District indicted Copple for conspiracy to distribute methamphetamine. (Second Superseding Indictment 1–2, ECF No. 101). He pleaded guilty, and the Court sentenced him to a 168-month term of imprisonment. (Judgment 1, 3, ECF No. 353). He is currently incarcerated at the United States Penitentiary in Leavenworth, Kansas ("USP Leavenworth"). (Copple's Mot. for Compassionate Release at 1). And his projected release date is February 24, 2029. *See Find an Inmate*, Federal Bureau of Prisons [hereinafter "BOP"] (last visited Mar. 16, 2021).[1]

#### B. The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about Copple's background and the nature and circumstances of the offense. (PSR 1, ECF No. 328).

---

[1] *Available at* https://www.bop.gov/inmateloc/.

According to the PSR, state and federal law-enforcement officers in 2015 worked together to uncover a ten-person conspiracy to distribute methamphetamine across Southern Illinois. (*Id.* at 5). "The investigation revealed large amounts of methamphetamine in ice form . . . were being introduced into" the region "from Cape Girardeau, St. Louis, and Kansas City, Missouri, as well as Las Vegas, Nevada. The ice obtained from Missouri was sold by individuals who were involved with a Mexican drug cartel producing the high-quality ice." (*Id.*) The "[c]o-conspirators often pooled their money to make purchases in one-ounce or higher amounts." (*Id.*).

Copple in particular "was a top ice supplier" who "participated in a theft and burglary ring" and once "received an assault rifle . . . as payment for a drug debt." (*Id.* at 6). Law enforcement was first alerted to his criminal activity in response "to a report of a domestic disturbance." (*Id.*)

> Upon arriving, officers observed Jeremy Copple flee from the scene. His vehicle was located in the driveway, and officers observed inside the vehicle, in plain sight, drug paraphernalia and ammunition. An officer canine also alerted to the presence of drugs inside the vehicle. A search yielded a small amount of marihuana and two firearms.

(*Id.*). Copple then "admitted to using a half-gram to a gram of ice daily" and "reported that he and his wife . . . were heroin addicts" that "started using methamphetamine in order to stop heroin." (*Id.*). Less than a year later, Copple fled from officers after a traffic stop—nine days after, he was caught and "was found to be in possession of a green case containing 2.5 grams of marihuana, 3 grams of methamphetamine, 4 tablets of Oxycodone, 17 pills of Valium, and $220 in United States currency." (*Id.* at 6–7). As the investigation progressed, law enforcement learned that Copple built a reputation "as a 'top player,' moving half-ounce to ounce quantities of ice." (*Id.* at 7). Even while detained, Copple was communicating with his coconspirators "through vents in jail." (*Id.* at 8). The total relevant conduct involved nearly 1,000 grams of methamphetamine and "the possession of three firearms, one of which was stolen." (*Id.*).

Before committing this offense, Copple had seven prior convictions. (*Id.* at 11–13). This includes a 2011 conviction for retail theft; a 2012 conviction for burglary; and a 2012 conviction for deceptive practices after Copple "delivered bank checks to Gas Mart . . . knowing the checks would not be paid by the depositor." (*Id.* at 11–12).

### C. Copple's Motion for Compassionate Release

In 2020, Copple moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Copple's Mot. for Compassionate Release at 1). He contends that serious medical conditions—"depression, high blood pressure, deadness in her limbs and serious asthma"—make **his mother** especially vulnerable to the COVID-19 virus. (*Id.* at 3–4). In brief, Copple contends that his mother "is exceptionally vulnerable to contracting the deadly disease" and needs him to care for her, an *extraordinary and compelling* reason warranting his release. (*Id.* at 4–5).

## II. LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant must show that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Copple failed to meet that burden.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See*

*United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors are as follows:

(1) the nature and circumstances of the offense and the history and characteristic of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

(5) any pertinent policy statement—

    (A) issued by the Sentencing Commission . . . ; and

    (B) that . . . is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Similarly, the Bureau of Prisons considers the following nonexclusive factors to determine whether extraordinary and compelling reasons warrant a sentence modification:

- Nature and circumstances of the inmate's offense.
- Criminal history.
- Comments from victims.
- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.
- Length of sentence and amount of time served. . . .
- Inmate's current age.
- Inmate's age at the time of offense and sentencing.
- Inmate's release plans (employment, medical, financial).
- Whether release would minimize the severity of the offense.

Federal Bureau of Prisons, Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence* (2019).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Rather, it is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is—or is not—appropriate. *See Shannon*, 518 F.3d at 496; *United States v.*

*Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[A] district court's discretion in this area—as in all sentencing matters—is broad.").

### B. Exhaustion

Before moving for compassionate release in federal court, criminal defendants must exhaust their administrative remedies with the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). In other words, they must either (1) "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) wait 30 days to lapse "from the receipt of such a request by the warden, whichever is earlier." *Id.* This exhaustion requirement is a *mandatory claim-processing* rule, meaning that, " '[i]f properly invoked, [it] must be enforced . . . .' " *United States v. Sanford*, — F.3d —, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021) (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 1843, 1849 (2019)). And although the Government was not ordered to respond, the Court must still "conduct a preliminary review to determine whether the motion is . . . premature." SDIL Fourth Am. Admin. Order 265 (2020).

Copple attached his request for compassionate release with the warden of USP Leavenworth: "I [am] seeking compassionate release under . . . 18 U.S.C. § 3582(c)(1)(A) due to COVID-19 and the fact we are unable to social distance." (Copple's Mot. for Compassionate Release at Ex. A). The warden denied it. (*Id.*). Though Copple's request made no mention of his mother, the Court will still consider his administrative remedies exhausted because, as discussed below, his Motion fails on the merits.

### C. The § 3553(a) Factors

The Court acknowledges the particular danger posed by the COVID-19 pandemic.. "But the mere existence of COVID-19 in society . . . cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Director of the Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released nearly 23,000 inmates that it has identified as "suitable for home confinement" and has administered over 80,000 doses of the COVID-19 vaccine. *Coronavirus*, BOP (last visited Mar. 16, 2021).[2] So although not bound by any BOP determination, the Court "will give the Director's analysis substantial weight . . . ." *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

With that in mind, the § 3553(a) factors weigh against a sentence modification here. First, the Court commends Copple for "stay[ing] shot free while in prison and [doing] massive programing." (Copple's Mot. for Compassionate Release at 5). Even so, that is **expected** of him. And while the Court is sympathetic to his mother's condition, the COVID-19 vaccine is now being administered to both the elderly and those with underlying illnesses. More importantly, however, Copple was convicted of a serious drug crime that also involved firearms. Only a few years ago, he was evading police and communicating with his coconspirators from jail. Although Copple asserts that his "children need his support," (*id.*), that did not prevent him from committing the instant offense. Yet public safety is paramount: Given Copple's recent history with drugs and firearms, the Court will not leave the matter to chance. In other words, despite the COVID-19 pandemic and the risks it poses, Copple's incarceration remains necessary to reflect the seriousness

---

[2] *Available at* https://www.bop.gov/coronavirus/.

of the offense, to promote respect for the law, to provide just punishment, to adequately deter Copple and others from committing further crimes, and to protect the public.

### III.     CONCLUSION

The Court **DENIES** Defendant Jeremy S. Copple's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Tuesday, March 16, 2021**

<u>S/J. Phil Gilbert</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
